OPINION McKEAGUE, Circuit Judge. Faluso Fakorede brings this claim alleging unlawful retaliation in violation of the False Claims Act (FCA) following his termination from Mid-South Heart Center in February of 2015. The district court found Fakorede failed to allege that he had engaged in protected activity prior to his termination and thus granted Mid-South’s Rule 12(b)(6) motion to dismiss. We agree and affirm. I Fakorede was a physician who worked as a cardiologist in Jackson, Tennessee from 2013 to 2015. He was recruited to work in the Jackson area by the Jackson-Madison County General Hospital District — a Tennessee governmental entity— in order to fill a need for cardiologists in the area. As a result, Fakorede became an employee of Mid-South, a private corporation in Jackson. Under a separate recruiting agreement, the Hospital District agreed to establish a support account that ensured Fakorede was paid $500,000, no matter his total patient collections. Essentially, the Hospital District permitted Fakorede to use the support account to draw the difference between his net collections (total collections value minus any expenses attributed to him) and $500,000. Instead, in accordance with its separate employment agreement, Mid-South simply paid Fako-rede $500,000, accounted for his collections, and then directed him to draw on the support account based on those calculations. Fakorede then assigned the draw to Mid-South. Additionally, Mid-South and Fakorede agreed that, if Fakorede. did not stay for the full three-year term outlined in the recruiting agreement, he would owe any draw amount back to the Hospital District. However, Mid-South agreed to indemnify Fakorede if the Hospital .District determined “based on an accounting” that draws from the support fund had been improperly calculated. Approximately ten months into his first year, Fakorede asked for - documentation related to Mid-South’s calculations of the draw totals. Then, approximately fourteen months after starting work at Mid-South— some four months after he first raised concerns about how expenses had been calculated — Fakorede was terminated. It later came to light that Mid-South had improperly attributed over $200,000 in expenses to Fakorede during his first year. He now brings this retaliation claim under the FGA, 31 U.S.C. § 3730(h), based on his termination. The district court granted Mid-South’s Rule 12(b)(6) motion to dismiss for failure to state a claim and dismissed the complaint. II The district court’s grant of a motion to dismiss pursuant to Rule 12(b)(6) is reviewed de novo. Goad v. Mitchell, 297 F.3d 497, 500 (6th Cir. 2002). We may affirm a decision of the district court if correct for any reason, including one not considered below. U.S. Postal Serv. v. Nat’l Ass’n of Letter Carriers, AFL-CIO, 330 F.3d 747, 750 (6th Cir. 2003). Rule 12(b)(6) permits a court to dismiss a complaint for “failure to state a claim upon which relief can be granted.” Fed. R. Civ. P. 12(b)(6). We construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To survive a Rule 12(b)(6) motion, the complaint must contain “either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.” D’Ambrosio v. Marino, 747 F.3d 378, 383 (6th Cir. 2014) (citation omitted). This case arises under the FCA’s anti-retaliation provision, 31 U.S.C. § 3730(h). The provision provides relief for an employee who was: ... discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter. 31 U.S.C. § 3730(h). To succeed on a claim that § 3730(h) was violated, a plaintiff must show that (1) she engaged in a protected activity, (2) the employer knew she engaged in the protected activity, and (3) the employer discharged or otherwise discriminated against the employee as a result of the protected activity. Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 566 (6th Cir. 2003); Jones-McNamara v. Holzer Health Sys., 630 Fed.Appx. 394, 398 (6th Cir. 2015). Dismissal of a retaliation claim is proper when a plaintiff fails to adequately plead any one of these three elements. See Yuhasz, 341 F.3d at 566. Our analysis begins and ends with the first element — whether Fakorede’s complaint adequately alleges that he engaged in protected activity prior to his termination. Relevant protected activity would be an “effort[ ] to stop 1 or more violations of [the FCA].” 31 U.S.C. § 3730(h). Such an effort must stem from a reasonable belief that fraud is being committed against the federal government. Jones-McNamara, 630 Fed.Appx. at 400. In other words, to plead protected activity, Fa-korede must allege conduct directed at stopping what he'reasonably believed to be fraud committed against the federal government. See Miller v. Abbott Labs., 648 Fed.Appx. 555, 560 (6th Cir. 2016) (quoting Jones-McNamara, 630 Fed.Appx. at 399). In this, Fakorede’s pleadings fall short. Fakorede’s relevant pre-termination conduct was related to the calculation of costs attributed to him by Mid-South for which it was effectively reimbursed by the Hospital District. Fakorede requested information related to those expenses, including a year-end financial report and underlying documents and data. After receiving the financial report, he “expressed concerns” about some of .the expenses attributed to him. Eventually, he requested an independent review of the report and was told there would be a line-item audit. Although Fakorede was “reassured by the line-item audit,” he nonetheless “reminded” the Hospital District that “only expenses permitted by federal law for the [Hospital District] to cover” were properly attributable to Fakorede under his recruiting agreement. He was terminated approximately one week later. To tie his conduct to federal fraud, as is necessary for his claim to survive, Fakorede asserts that, if Mid-South improperly calculated expenses to overdraw from the support account, then any Medicare claims “tainted” by violations of the Stark Law and Anti-Kickback Statute were submitted to Medicare in violation of the FCA. This legal conclusion itself is not unfounded, as the connection between the Anti-Kickback Statute, the Stark Law, and the FCA is statutory. See 42 U.S.C. § 1395nn(a)(l)(B); 42 U.S.C. § 1320a-7b(g). Nonetheless, one cannot reasonably infer from Fakorede’s complaint that his efforts were directed toward preventing what he reasonably believed was ongoing federal fraud. In essence, Fakorede requested information related to expenses attributed to him by his private employer, expressed concerns as to whether those expenses were correctly calculated and reimbursed by a Tennessee entity, and reminded others that an audit should check for compliance with federal law. This fails to allege conduct reasonably related to fraud against the federal government. See McKenzie v. BellSouth Telecommunications, Inc., 219 F.3d 508, 516-17 (6th Cir. 2000) (protected activity does not include “merely urging compliance with regulations”) (citing U.S. ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 744 (D.C. Cir. 1998)); see also Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (we do not accept legal conclusions as true absent supporting factual allegations). Accordingly, Fakorede has not pled that he engaged in protected activity. However, Fakorede argues that his complaint should survive because it is reasonable to infer that he was concerned about the violations of federal law because he knew that Mid-South, like all major healthcare providers, submitted claims to Medicare for Fakorede’s services. But this inference is not supported by any factual allegations in the complaint. At best, the complaint — in its “governing law” section — shows that the FCA may be implicated by violations of the Stark Law. While this may be true, there are no underlying allegations to support the conclusion that Fakorede himself, at any time prior to his termination, understood the connection between the FCA and other federal law, that his activity was motivated by this connection, or that even a single Medicare claim was submitted by Mid-South during that time. We are not to assume Fakorede’s conduct was directed at preventing possibly “tainted” claims from being submitted to the federal government when nothing in the pleadings shows he understood, was motivated by, or even aware of that possibility. See Iqbal, 556 U.S. at 679, 129 S.Ct. 1937. Still, it may be fair to infer that Fako-rede’s alleged conduct arose out of a reasonable belief that his employer was committing fraud against the Hospital District. Even so, it is unreasonable to infer that Fakorede believed any fraud committed against the Hospital District — a state entity — constituted fraud against the federal government. Indeed, the alleged fraud committed against the Hospital District was precisely what Fakorede’s “concerns” seemed to target: that Mid-South miscalculated expenses in order to induce the Hospital District to overpay. However, the alleged fraud against the federal government — involving unspecified Medicare claims “tainted” by violations of federal law — was indirect, complex, and nowhere facially contemplated in Fakorede’s conduct as described in his complaint. Absent any supporting factual allegations, it is unreasonable to infer that Fakorede’s conduct was directed toward preventing federal fraud. Thus, Fakorede has failed to allege he was engaged in protected activity under the FCA prior to his termination. He therefore has no retaliation claim under 31 U.S.C. § 3730(h). Ill For the foregoing reasons, we affirm the district court.