**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 19a0573n.06**

**No. 19-3096**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TERESA BERRY, Administrator of the Estate of Rhianna Filichia, | ) ) ) | **FILED**<br>Nov 14, 2019<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED |
| v. | ) ) | STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF |
| DELAWARE COUNTY SHERIFF'S OFFICE, | ) ) | OHIO |
| Defendant-Appellee. | ) ) ) | |

BEFORE: MERRITT, DAUGHTREY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

After her daughter died while in jail, Teresa Berry sued the Delaware County, Ohio Sheriff's Office for violating her daughter's civil rights under 42 U.S.C. § 1983. This appeal presents two issues: (1) whether the district court correctly granted summary judgment in favor of defendant on Berry's municipal liability claims and (2) whether the district court abused its discretion in denying Berry's motion to vacate the judgment. For the reasons stated below, we affirm.

I.

A.

Plaintiff, Teresa Berry, is the administratrix of the estate of her daughter, Rhianna Filichia. Filichia suffered from diverticulosis, a condition in which pouches (diverticula) form in the walls

of the intestines. She also suffered from chronic attacks of diverticulitis, which is when diverticula become inflamed or infected.

In 2013, Filichia was charged in Delaware County, Ohio for driving under the influence and failing to stop. She pleaded guilty to those charges and was ordered to spend time in jail. Filichia was permitted to serve the jail time during weekends.

Filichia was scheduled to serve some of her remaining sentence on February 6 and 7, 2016, but she failed to appear due to her diverticulitis. A warrant for her arrest was issued on February 9, 2016. Between February 6 and 21, 2016, Filichia went to her doctor and the hospital several times due to pain caused by her diverticulitis.

On February 20, 2016, Deputy Darren Mohnsen and Deputy Nathan Hysell went to Filichia's residence to execute a warrant for her arrest. Filichia's boyfriend, James Egbert, answered the door. Before Deputy Mohnsen had arrived, Filichia had told Egbert that she was in pain. Egbert told the deputies about Filichia's medical condition and that she was in pain. He also asked the deputies if Filichia could go to the emergency room rather than jail. The deputies, however, said that Filichia had to go to jail, but that there was a nurse at the jail.

At the jail's intake, a licensed practical nurse evaluated Filichia for confinement. The licensed practical nurse determined that Filichia was fit for confinement. Roughly thirty-five hours later, Filichia became unresponsive. Despite efforts to save her life, Filichia died.

B.

Plaintiff sued the Delaware County Sheriff's Office and six John Doe Officers from that office. She alleged, among other things, that the Sheriff's Office violated the Eighth Amendment and 42 U.S.C. § 1983 by not giving adequate medical training to its employees and, as a result, faced municipal liability pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). She subsequently amended her complaint; she dismissed the John Doe

Officers, but added Correctional Healthcare Companies, Inc.—the company that provided medical services at the jail—as a defendant.

The Sheriff's Office moved for summary judgment. It argued that the district court should grant its motion for multiple reasons, including (1) the Sheriff's Office was not a suable party and (2) no reasonable juror could find for plaintiff on her failure-to-train claim. In response, plaintiff moved to substitute Delaware County Sheriff Russell L. Martin for the Delaware County Sheriff's Office. The district court granted plaintiff's substitution motion on January 23, 2019. The court directed plaintiff to "file her Second Amended Complaint within **SEVEN DAYS** of this Opinion and Order." Moreover, the district court warned that "**Failure to comply with this Opinion and Order will result in the Amended Complaint being dismissed, without additional notice, for naming a party that is not** *sui juris*."

On February 1, 2019—two days after the amendment deadline—the district court granted the Sheriff's Office's summary judgment motion and dismissed plaintiff's complaint with prejudice. It reasoned that although it had granted plaintiff's motion to substitute a suable party into the lawsuit, plaintiff failed to do so. Alternatively, the district court determined any amendment would be futile because plaintiff failed to prove that there were any genuine disputes of material fact that showed the Sheriff was liable under *Monell*. Plaintiff moved to vacate the judgment, which the district court denied. Plaintiff timely appeals.

## II.

The main issue on appeal is whether the district court correctly granted summary judgment in the Sheriff's Office's favor. "We review de novo a district court's decision on [a] motion[] for summary judgment." *Burnette Foods Inc. v. U.S. Dep't of Agric.*, 920 F.3d 461, 466 (6th Cir. 2019) (citation omitted)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

*Id*. at 466–67 (quoting Fed. R. Civ. P. 56(a)). The moving party must first show that the nonmoving party failed to "establish the existence of an element essential to . . . [the nonmoving] party's case, and on which . . . [the nonmoving] party will bear the burden of proof at trial." *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986)). "Once the moving party has met the initial burden of showing the absence of a genuine dispute of material fact, the non-moving party must then 'come forward with specific facts showing that there is a genuine issue for trial.'" *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The non-moving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* at 529 (quoting *Matsushita*, 475 U.S. at 586). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 529 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

A.

As an initial matter, we conclude that the district court correctly granted summary judgment in favor of the Sheriff's Office because plaintiff failed to name a suable party. Berry does not contest that decision, and she has not directed us to any record evidence that suggests she has included a suable defendant in her lawsuit.

B.

The crux of this appeal is plaintiff's attack on the district court's alternative reason for granting summary judgment in the Sheriff's Office's favor—that plaintiff failed to establish a "failure-to-train" claim under *Monell*. As set forth below, we agree with the district court that this alternative path additionally supports its grant of summary judgment.

"[U]nder § 1983, local governments are responsible only for *their own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (emphasis added) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). "Instead, a municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights."[1]  *Id.* (quoting *Monell*, 436 U.S. at 692).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* (quoting *Connick*, 563 U.S. at 61). To show the existence of a municipal policy, a plaintiff must properly allege at least one of the following:

(1)  the existence of an illegal official policy or legislative enactment;

(2)  that an official with final decision making authority ratified illegal actions;

(3)  the existence of a policy of inadequate training or supervision; or

(4)  the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations.

---

[1]In *Winkler v. Madison County*, however, we recognized that it is an unsettled question whether finding a municipality liable under § 1983 requires proof that an individual defendant committed a constitutional violation. 893 F.3d 877, 899–901 (6th Cir. 2018). The district court acknowledged the unsettled question and assumed either (1) Deputy Mohnsen had committed a constitutional violation by being deliberately indifferent to Filichia's serious medical needs or (2) plaintiff had established a constitutional violation, but did not need to establish that an individual municipal employee had committed a constitutional violation. Because this question is unsettled and answering it is not necessary to resolve this appeal, we assume—without deciding— that plaintiff has made whatever showings are necessary on this issue and resolve the appeal on other grounds.

*D'Ambrosio*, 747 F.3d at 386 (citation omitted).  Plaintiff relies solely on the inadequate training method.

Inadequate training can be the basis for a § 1983 municipal liability claim when it "amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Roell v. Hamilton Cty., Ohio/Hamilton Cty. Bd. of Cty. Comm'rs*, 870 F.3d 471, 487 (6th Cir. 2017).  But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick*, 563 U.S. at 61.  To succeed on an inadequate training claim, a plaintiff must prove: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [municipality's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury."  *Roell*, 870 F.3d at 487 (quoting *Brown v. Chapman*, 814 F.3d 447, 463 (6th Cir. 2016)).  Plaintiff fails to show a genuine dispute of material fact on all three requirements.

1.

Plaintiff argues that the Sheriff's Office inadequately trained its officers "to identify individuals in questionable health."  That is her contention because the only medical training the officers receive concerns CPR and first aid.  We recently rejected an equivalent contention in *Winkler v. Madison County* and do so again here.

The plaintiff in *Winkler* argued that "there [wa]s no evidence that any jailer received training on anything other than basic first aid and CPR."  893 F.3d at 903.  But we rejected that contention because the *Winkler* plaintiff "presented no proof to show that this inadequacy resulted from deliberate indifference."  *Id*. at 902.  That is, there was "no basis to conclude that the County exhibited deliberate indifference by failing to provide additional medical training to jail personnel" beyond CPR and first aid training.  *Id*. at 903.

So too here.  Plaintiff concedes that the officers in this case, like the officers in *Winkler*, had training on CPR and first aid.  And she concedes that "Deputy Mohnsen acknowledge[d] that he believed Filichia to be in questionable health when he delivered her to the jail during his discussions with the [licensed practical nurse]."  In other words, plaintiff concedes that Deputy Mohnsen did precisely what he should have done—he perceived that something might be medically wrong with Filichia, and he conveyed that to a medical professional.[2]  Plaintiff has identified no record evidence that disputes (1) that Deputy Mohnsen had undergone first aid and CPR training or (2) that he perceived Filichia to be in questionable health and conveyed his perception to a medical professional.

*Shadrick v. Hopkins County, Kentucky*, 805 F.3d 724 (6th Cir. 2015), is of no help to plaintiff.  There, a county contracted with "a private, for-profit corporation, to provide medical services to inmates" at a detention center.  *Id.* at 728–29. We determined that the private medical services provider's training program was inadequate.  *Id*. at 740 (citation omitted).  But *Shadrick*'s inadequacy-of-training analysis concerned the adequacy of training provided to licensed practical nurses, not police officers.  *Id*. at 740–42.  The training that officers receive (when they are not the primary medical care providers) and the training that licensed practical nurses receive (when they are the primary medical care providers), along with the tasks they must perform, are meaningfully different.

---

[2]In similar circumstances, we have determined that police officers are entitled to rely on assessments of medical professionals regarding whether an inmate should be transported to a hospital.  *See*, *e.g.*, *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) ("Although [the police officer] admits that [the inmate] told him that he had smoked crack cocaine, [the police officer] was entitled to rely on the EMTs' and the jail nurse's medical assessments that [the inmate] did not need to be transported to the hospital.").

Accordingly, plaintiff has not created a genuine dispute of material fact regarding whether Deputy Mohnsen's training was inadequate to the tasks he had to perform.

2.

There are two ways to prove that the inadequacy of a training program is the result of a municipality's deliberate indifference. A plaintiff may prove (1) a "pattern of similar constitutional violations by untrained employees" or (2) "'a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential' for a constitutional violation." *Id.* at 738–39 (citations omitted). We address each method in turn.

a.

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (citation omitted). Such a pattern is ordinarily necessary because "[u]ntil the [municipality] had notice of persistent misconduct, it did not have 'the opportunity to conform to constitutional dictates,' nor could its inaction have caused the deprivation of [plaintiff's] constitutional rights." *D'Ambrosio*, 747 F.3d at 388 (quoting *Connick*, 563 U.S. at 63 n.7). Moreover, "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the [municipality] and the opportunity to conform to constitutional dictates." *Connick*, 563 U.S. at 63 n.7.

Additionally, the similarity must be particularized. In *Connick*, the Supreme Court connected the notice requirement not merely to the generalized type of constitutional violation in dispute (*Brady* violations), but rather to the specific way that the constitutional violation happened. The Supreme Court determined that four prior *Brady* violations did not place the district attorney's office on notice that its "training was inadequate with respect to the sort of *Brady* violation at

issue" in the case because "[n]one of [the prior *Brady* violations] involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind." *Connick*, 563 U.S. at 62–63. In short, the prior examples of wrongdoing must violate the same constitutional rights and violate them in the same way. *See D'Ambrosio*, 747 F.3d at 388 (noting that three prior improper trial comments were insufficient to provide notice of *Brady* violations).

Plaintiff asserts that "another inmate . . . died the same night as Filichia" and because of that death, she concludes that "[t]here is evidence supporting [a] pattern, which went unmentioned by the trial court." To support that contention, plaintiff cites the deposition transcript of Deputy Rachel O'Brien. O'Brien testified—without the highest degree of firmness—that another inmate did die:

Plaintiff's Attorney: Has anyone other than Rhianna Filichia died at the Delaware County Jail?

O'Brien: Yeah.

Plaintiff's Attorney: Who?

O'Brien: I don't know. I know Tye [Downard] did.

Plaintiff's Attorney: And do you know the circumstances of his death?

O'Brien: All I -- I wasn't there on shift that day.

Plaintiff's Attorney: Did he die the day before or the day after Rhianna?

O'Brien: I think it was the same night, but I had gone home.

Plaintiff's Attorney: So he was there while you were on shift?

O'Brien: Yes.

Plaintiff's Attorney: But he was alive?

O'Brien: I don't know.

> Plaintiff's Attorney: Well, were you not responsible for watching him? Was he not on medical watch?
>
> O'Brien: I was in booking that day.

This testimony is insufficient to establish a pattern of similar constitutional violations. First, if the other inmate died the same night as Filichia, O'Brien's testimony is, at best, evidence of contemporaneous conduct, which does not provide notice. *Connick*, 563 U.S. at 63 n.7. Second, O'Brien's testimony does not provide any information regarding how the other inmate died. Without more information—which plaintiff has the obligation to provide because she is the nonmovant, *Bormuth*, 870 F.3d at 499 (citation omitted)—O'Brien's testimony does not demonstrate that the circumstances of Filichia's death and those of the other inmate are similar enough for the purposes of establishing a pattern. Therefore, plaintiff's pattern theory fails to establish a genuine dispute of material fact regarding whether municipal deliberate indifference caused the alleged training inadequacy.

b.

In addition to the pattern theory, a plaintiff may establish that a municipality's training program is inadequate because of deliberate indifference by proving "a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential" for the violation of constitutional rights. *Shadrick*, 805 F.3d at 739 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 409 (1997)). This method of proving that deliberate indifference caused a training program's inadequacy is available "in a narrow range of circumstances" in which a violation of federal rights "may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations." *Id.* at 739 (citation omitted).

The district court ruled that plaintiff "[could not] prevail under the 'single incident' theory." From the district court's perspective, "[i]n *Winkler*, the Sixth Circuit rejected a theory virtually identical to [p]laintiff's, concluding that the assertion that jail personnel received only first aid and CPR training was alone insufficient to 'explain how the quality of the medical training provided put the County on notice of the likelihood that jail personnel would respond inadequately to an inmate's medical emergency.'" (quoting *Winkler*, 893 F.3d at 903). "Because the evidence showed that the third party's medical staff was available to jail personnel for consultation and that jail personnel indeed contacted that staff regarding the decedent's medical complaints," the *Winkler* court "found 'no basis to conclude that the County exhibited deliberate indifference by failing to provide additional medical training to jail personnel.'" (quoting *id.*) The district court was persuaded that the facts in this case closely mirrored those in *Winkler*: "Plaintiff fails to explain how the medical training [that the Sheriff's Office's] employees received put Delaware County on notice of the likelihood that jail personnel would respond inadequately to an inmate's medical emergency." "This is especially true where there is no evidence that [contracted medical] staff was, as a matter of policy, unavailable to jail staff for consultation." The district court's analysis of *Winkler* on this issue is persuasive and we approve it.

To prove that deliberate indifference caused the inadequacy of a municipality's training program, the plaintiff in *Winkler*—like Berry here—argued that "there [wa]s no evidence that any jailer received training on anything other than basic first aid and CPR." 893 F.3d at 903. The *Winkler* plaintiff noted that "the jailers were the only medical providers at the jail all but 40 hours per week." *Id.* The Delaware County Jail, however, has even more in-person medical coverage; it has nursing coverage 24 hours a day, seven days a week. In *Winkler*, the contract "medical professionals were contacted multiple times with regard to [the decedent's] complaints of stomach

pain." *Id*. On those facts, we concluded there was "no basis to conclude that the [municipality] exhibited deliberate indifference by failing to provide additional medical training to jail personnel." *Id*.

The same is true here. The nurses were contacted about Filichia's abdominal pain and the nurses had multiple interactions with Filichia. The contract medical professionals in *Winkler* were "available to jail personnel, either in person or by phone, for consultation about an inmate 24 hours a day, 7 days a week." *Id*. As previously noted, the Delaware County Jail has even more in-person medical coverage with in-person nursing coverage all day, every day. Because the relevant facts of this case mirror *Winkler*'s so closely, we conclude that only having CPR and first-aid training does not create a genuine dispute of material fact regarding whether deliberate indifference caused the alleged inadequacy of the Sheriff's Office's training program.

3.

On a failure-to-train claim, a plaintiff must prove—among other things—"that the [training's] inadequacy is closely related to or actually caused the plaintiff's injury." *Plinton v. Cty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (citation and internal quotation marks omitted). The "closely related to" and "actually caused" phrases come from *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). The Supreme Court stated that a "training program must be closely related to the ultimate injury" and that the plaintiff must "prove that the deficiency in training actually caused the police officers' indifference to her medical needs." *Id.* "[A]dopt[ing] lesser standards of fault and causation," the Supreme Court warned, "would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Id.*

On the causation issue, the district court framed the question as whether plaintiff identified any "evidence suggesting that either Deputy Mohnsen's or any other jail personnel's inability to identify Filichia's questionable health le[d] to her injury." The district court answered that question in the negative:

> [T]he video evidence reveals that one of the first things Deputy Mohnsen says upon entering the jail with Filichia is that he needs to speak to a nurse. When [licensed practical nurse] Bloomfield arrives, Deputy Mohnsen immediately explains that Filichia had medical issues involving pain in her abdomen, had recently been to the hospital, had a colonoscopy scheduled for later in the week, and that she had brought her medications and hospital discharge paperwork with her. Thus, Deputy Mohnsen had identified that Filichia's health was questionable, regardless of the training he received.

Additionally, the district court noted that "[p]laintiff d[id] not specify any other corrections officer who interacted with Filichia at the jail" and "failed, during the interaction, to recognize that Filichia needed medical attention due to inadequate training, and failed to refer Filichia for medical attention." The district court's evaluation of this issue is sound and we endorse it.

Plaintiff has not identified record evidence that demonstrates that the allegedly deficient training caused Deputy Mohnsen to be deliberately indifferent to Filichia's medical needs. Plaintiff fails on this point because Deputy Mohnsen was not indifferent to Filichia's medical needs, much less deliberately indifferent. As plaintiff acknowledges, once Deputy Mohnsen and Filichia reached the jail, he contacted a licensed practical nurse and conveyed that he believed that Filichia was in questionable health. His conduct was precisely the opposite of deliberate indifference. Additionally, plaintiff has not identified record evidence that suggests other jail personnel (1) interacted with Filichia, (2) failed—because of inadequate training—to recognize that Filichia needed medical attention, and (3) failed to refer Filichia for medical attention. Accordingly, plaintiff has not identified a genuine dispute of material fact regarding whether the training's alleged inadequacy was closely related to or actually caused Filichia's injury.

III.

The second issue on appeal is the district court's denial of plaintiff's motion to vacate the judgment. "A district court's grant of post-judgment relief under [Federal] Rule [of Civil Procedure] 60(b) is reviewed for an abuse of discretion." *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (citation omitted). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 748 (6th Cir. 2016) (citation omitted). Additionally, for an abuse of discretion to be present, there must be "a definite and firm conviction that the trial court committed a clear error of judgment." *Blue Diamond Coal*, 249 F.3d at 524 (citation omitted). Moreover, "relief under Rule 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Id.* (citation omitted).

"On motion and just terms," Rule 60(b) authorizes a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:"

(1)   mistake, inadvertence, surprise, or excusable neglect;

(2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)   the judgment is void;

(5)   the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)   any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "As a prerequisite to relief under Rule 60(b), a party must establish that the facts of its case are within one of the enumerated reasons contained in Rule 60(b) that warrant

relief from judgment." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 543 (6th Cir. 2004) (citation omitted). "An appeal from an order denying a Rule 60(b) motion does not bring up for review the underlying judgment disposing of the complaint." *Id.* (citations omitted). Instead, our task is restricted to determining "whether one of the specified circumstances exists in which [the movant] is entitled to reopen the merits of his underlying claims." *Id.* (citation omitted).

In the present case, plaintiff moved the district court for leave to substitute Delaware County Sheriff Russell L. Martin for the Delaware County Sheriff's Office as the defendant in the lawsuit. On Wednesday, January 23, 2019, the district court granted plaintiff's motion giving plaintiff seven days to file a second amended complaint with the new defendant. On Friday, February 1, 2019—the ninth day from the grant of the motion—plaintiff had still not filed a second amended complaint. Consequently, the district court granted defendant's motion for summary judgment. That same day, the clerk of the court entered a judgment that dismissed the lawsuit.

Later—but still on February 1, 2019—plaintiff filed a motion to vacate the judgment that dismissed the lawsuit. Plaintiff argued that her failure to file the second amended complaint was merely an oversight. According to plaintiff, her second amended complaint had been prepared for nearly eight months, but there was an issue at her lawyer's office. Specifically, the assistant (Suzette Doak) of plaintiff's attorney (Erica Ann Probst) was supposed to file the second amended complaint, but on January 28, 2019, Ms. Doak's husband had a medical emergency and she had to take him to a hospital. Ms. Doak did not return to the office until January 31, 2019. Additionally, the majority of Ms. Probst's staff were not in the office from January 30, 2019 to February 1, 2019 because of inclement weather. Neither Ms. Doak nor Ms. Probst realized the second amended complaint had not been filed. Once Ms. Probst received the order that dismissed the lawsuit, she filed the second amended complaint the same day.

The district court denied plaintiff's motion to vacate the judgment, noting that its previously issued summary judgment opinion "also explained that [it] would have alternatively granted summary judgment in favor of the Sherriff [sic] on the merits . . . even if Plaintiff had filed her Second Amended Complaint." Because the district court properly granted summary judgment on these alternative grounds, her challenge to the district court's motion to vacate the judgment fails as well.

IV.

For these reasons, we affirm the district court's judgment.