28 F.3d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John A. PICHA, Plaintiff-Appellant,
v.
CITY OF PARMA; and Michael A. Ries, individually and in his
official capacity as Mayor of Parma, Defendants-Appellees.
 No. 92-4262.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1994.
 
 Before: MILBURN and GUY, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 John A. Picha appeals the judgment based on the jury verdict in favor of the City of Parma (the City) and the judgment granted by the district court as a matter of law in favor of Mayor Michael A. Ries in this 42 U.S.C. Sec. 1983 action. We REVERSE the judgment as to Ries, AFFIRM the judgment as to the City, and REMAND to the district court for further proceedings consistent with this opinion.
 
 I.
 
 2
 This is the second time that this case has reached our court. In a previous opinion, also unpublished, we held that summary judgment for all defendants[1] was inappropriate. Picha v. City of Parma, No. 91-3501, 1992 WL 57419 (6th Cir. March 25, 1992). Picha's claims under Sec. 1983 stemmed from his loss of employment with the City in 1988, after 17 years as Chief Inspector. He alleges that his employment as a classified employee was terminated, by privatizing the inspection department, in retaliation for his political activity in support of Mayor Ries's opponent, then-Mayor John Petruska, in the 1987 Democratic primary for mayor, and that this termination violated his right to freedom of speech under the First Amendment.
 
 
 3
 We held in our earlier decision that, on the summary judgment record, there were genuine issues of material fact, precluding summary judgment, concerning the motivation for Picha's dismissal on the part of both Mayor Ries and the City Council, whose vote actually privatized Picha's department. Picha had presented evidence in affidavit form, most notably from former City Tax Commissioner Richard Leirer, that Ries had desired to terminate Picha because of his political activity on behalf of Petruska. There was also an affidavit from council member Linda Cross that Ries persuaded the City Council to pass the legislation necessary to privatize the City's building inspection program, thus abolishing Picha's position as Chief Inspector of the City, by promising that Picha would be given a job in the building department and would not simply be terminated by the City. Id. Leirer also stated that Mayor-elect Ries's staff had compiled a "hit list" of current City employees who had supported Petruska and whom Ries wanted removed from their jobs, and that Mayor-elect Ries had asked Leirer to list the possible ways to terminate Picha. We concluded, in reversing the grant of summary judgment to the defendants, that this was "strong circumstantial evidence of an intent to fire Picha through any means possible. This evidence, coupled with the testimony of Leirer, Cross, [former City Engineer Russell] Reinke, and Picha that Picha's political activities were widely known, would allow a reasonable juror to infer a political motivation for Picha's discharge." Id. at * 4.
 
 
 4
 The testimony offered by Picha at trial was substantially the same as the statements that this court relied on in precluding summary judgment for the defendants in our earlier disposition of this case. There was not, however, any evidence or any contention at the trial that the City Council voted to abolish Picha's job to punish him for his political activity. At the close of the evidence, the jury was given a series of interrogatories to which to respond.[2] The jury answered only the first two interrogatories, expressing its conclusions that Picha's political activity in support of Mayor Petruska was protected by the First Amendment but that this activity was not a motivating factor in the City's decision to abolish his job. The district court entered judgment in favor of the City on the basis of this partial verdict. It also entered judgment as a matter of law in favor of Ries, stating that "the evidence is overwhelming that the decision to privatize [the City's inspection program] would have been reached quite apart from [plaintiff's political status]" and "also because ... it would be advisable at this point to have all matters legally and procedurally disposed of by the Sixth Circuit at one time." This timely appeal followed.
 
 II.
 
 5
 We first address the issue of whether the district court erred in granting Ries's motion for judgment as a matter of law. We review the district court's holding de novo, using the same standard as applied by that court, so that Ries's motion should have been granted only if the evidence presented at trial, viewed in the light most favorable to Picha, makes it clear "that reasonable people could come to but one conclusion," namely, that there is no legally sufficient basis for a verdict in favor of Picha. Hill v. McIntyre, 884 F.2d 271, 274 (6th Cir.1989) (internal quotation marks omitted). Moreover, as the Supreme Court has made clear, the test for judgment as a matter of law is essentially the same as that for summary judgment, i.e., "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).
 
 III.
 
 6
 The legal test for whether a discharge from public employment violates a public employee's First Amendment rights was set forth by the Supreme Court in Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). The plaintiff makes his prima facie case by "show[ing] that his conduct was constitutionally protected, and that this conduct was a 'substantial factor' or to put it in other words, that it was a 'motivating factor' in the ... decision ... [to fire] him." Id. at 287 (footnote omitted). Once this showing is made, the burden then shifts to the defendant to rebut plaintiff's prima facie case by showing "by a preponderance of the evidence that it would have reached the same decision as to [plaintiff's employment] even in the absence of the protected conduct." Id.
 
 
 7
 In Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), the Supreme Court drew a close analogy between the burdens of proof in the Title VII[3] gender discrimination case at hand and those involved in a First Amendment case such as Mt. Healthy. Id. at 248-49. In so doing, it stated that "[a] court that finds for a plaintiff under this standard [requiring proof by a defendant employer that it would have fired the plaintiff even in the absence of protected conduct] has effectively concluded that an illegitimate motive was a 'but-for' cause of the employment decision." Id. at 249. Moreover, our court has often pointed out the close relationship between the burdens of proof for Title VII employment discrimination claims and claims under 42 U.S.C. Secs. 1981 and 1983. See Boutros v. Canton Regional Transit Auth., 997 F.2d 198, 202 (6th Cir.1993) ("This Circuit has held that the required elements of prima facie proof necessary for a plaintiff charging a racially hostile work environment under both Title VII and 42 U.S.C. Sec. 1983 are the same."); Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992) ("The [same] formula is the evidentiary framework applicable not only to claims brought under Title VII, but also to claims under ... 42 U.S.C. Sec. 1981....") (citations omitted).
 
 
 8
 As noted above, the proof at trial was essentially the same as the proof in opposition to summary judgment, but there was not, as stated, any proof or contention that the City Council privatized Picha's job as punishment for his political activity. Although Ries introduced some evidence that his desire to privatize was solely motivated by his aim to increase efficiency and to save money, a reasonable juror could find, based upon all the evidence presented, that Ries would not have recommended the abolition of Picha's department absent a desire to punish Picha for his protected political activity, or in other words, that Ries's retaliatory animus was a "but-for" cause of his decision to seek privatization of the City's building inspection program. This case is complicated, however, by the fact that the effective decision to privatize the City's inspection program, and therefore to eliminate Picha's job, was made not by Ries himself but by the City Council, a legislative body wholly independent of Ries's direct control. As stated, there is no proof or even a contention that the City Council reached its decision, although certainly heavily influenced by Ries's persuasion, for purposes other than to increase the efficiency and reduce the costs of city government. The question we must next address, therefore, is whether Ries should be granted judgment as a matter of law because his input into the decisionmaking process, although illegally motivated, was too remote for it to be considered a legal cause of Picha's dismissal.
 
 
 9
 Our jurisprudence answers this question, teaching that the relative remoteness of Ries's role in the privatization decision does not break the legal chain of causation between his illegal animus against Picha and Picha's ultimate dismissal. In Simpson v. Diversitech General, Inc., 945 F.2d 156 (6th Cir.1991), a Title VII employment discrimination case, an employee was fired after three incidents of insubordination. He claimed that the second incident, which led to his being required to enter into a Last Chance Agreement with his employer and to his eventual discharge for violating the terms of that agreement, would never have been reported but for the racial animus of one of his supervisors, Richard Ruckman. Id. at 160. The only role that the illegal motivation played in Simpson's discharge, however, was in the reporting of the second incident, because all other decisions, including the ultimate decision to terminate Simpson, were made by independent actors who possessed no proven discriminatory motive and whose judgment was in no way influenced by the racial attitudes of Ruckman. Id. at 159-60. We applied to these facts the test in Price Waterhouse, identical to the one in Mt. Healthy, whereby a defendant relying on an illegal "motivating factor" for terminating an employee can escape liability only when it can prove that the illegal motivation was not a "but-for" cause of the discharge, id. at 159, in other words, when the employer can prove that the employee would have been terminated even without the illegal animus towards him. We held that "[i]f Ruckman initiated the disciplinary action leading to Simpson's dismissal due to Simpson's race, simply showing that Ruckman had no role in the 'final' decision to terminate him is insufficient to establish that Diversitech would have made the same decision even absent the racial animus."[4] Id. at 160. See also Saye v. St. Vrain Valley Sch. Dist., 785 F.2d 862, 867 (10th Cir.1986) (finding that retaliatory animus by school principal against plaintiff's protected union activities could be "motivating factor" for plaintiff's dismissal even though "none of the school board members who voted not to renew Saye's employment were aware of her union involvement").[5]
 
 
 10
 This reasoning also underlay the result in Professional Ass'n of College Educators v. El Paso County Community College Dist., 730 F.2d 258 (5th Cir.), cert. denied, 469 U.S. 881 (1984). In that Fifth Circuit case, a college president recommended to the board of trustees that one of the college's deans be dismissed, in retaliation for the dean's protected First Amendment activities. The board dismissed the dean, without any member, however, being aware of the president's motive for making his recommendation. The court affirmed the award of damages against the college president, framing the causation issue as follows:
 
 
 11
 The causation issue in first amendment cases is purely factual: did retaliation for protected activity cause the termination in the sense that the termination would not have occurred in its absence? It is not necessary that the improper motive be the final link in the chain of causation: if an improper motive sets in motion the events that lead to termination that would not otherwise occur, intermediate step[s] in the chain of causation do not necessarily defeat the plaintiff's claim.
 
 
 12
 Id. at 266 (internal quotation marks omitted).
 
 
 13
 Applying these cases to the case at hand requires a similar outcome. As long as it is established that Ries initiated the process leading to Picha's termination on the basis of an illegal motivation, namely, as retaliation against Picha because of his protected First Amendment activity, then Ries can be held liable under the Mt. Healthy test for a violation of Picha's constitutional rights. Because a rational juror could find, on the basis of all of the evidence presented at trial, that Ries's actions, motivated by political retribution, were a "but-for" cause of Picha's dismissal by the City, Ries is not entitled to judgment as a matter of law.
 
 IV.
 
 14
 We next address the issue of the City's liability. As heretofore noted, the jury found that Picha's protected activity was not a substantial or motivating factor in the City's abolishing Picha's job. It is clear, from the court's charge, that the motivation of "the City" in abolishing the job was to be determined only by determining the motivation of the City Council in privatizing the work that Picha had been doing as a classified employee. The proof is ample to support the verdict that the City Council was not motivated by Picha's protected activity, and we do not understand Picha to contend the contrary. Moreover, under Monell v. Department of Social Servs., 436 U.S. 658 (1978), the City cannot be held to be liable, with respect to the action of the Mayor, under the doctrine of respondeat superior.
 
 
 15
 It is true that, under Feliciano v. City of Cleveland, 988 F.2d 649 (6th Cir.), cert. denied, 114 S.Ct. 90 (1993), the City could be held liable for an unconstitutional action by the Mayor, but only if the Mayor had final authority to take the action. Here it is undisputed that the Mayor did not have authority to privatize Picha's job, that only the City Council had such authority, and that it was the vote of the Council that privatized Picha's job.
 
 
 16
 Picha also alleged, and apparently still contends, that the City could have been held liable because the Mayor illegally failed to allow Picha recourse to other city employment, in violation of Ohio law, and that this issue should have been submitted with respect to his claim against the City. In effect, Picha contends the Mayor thereby violated a City policy, a policy required by the Ohio administrative code. Because, however, Mayor Ries is alleged by Picha to have violated the City's policy in failing to offer Picha other employment, Picha cannot, for relief against the City, rely on Monell and Feliciano.[6] Picha has failed to prove any policy of the City of Parma that resulted in his termination from the City's employment.
 
 V.
 
 17
 For the reasons stated above, we REVERSE the judgment of the district court as to Mayor Ries and AFFIRM the judgment as to the City of Parma. We REMAND this case for further proceedings consistent with this opinion.
 
 
 18
 RALPH B. GUY, Jr., Circuit Judge, concurring.
 
 
 19
 I concur in the result only because, under these circumstances, I believe that a reasonable juror could find Ries liable; however, that result is certainly not mandated by the facts.
 
 
 
 [1]
 Martin E. Vittardi, another city official, was also sued in his individual and official capacity in the original complaint. After the grant of Vittardi's motion for judgment as a matter of law at the close of Picha's presentation at trial of his case in chief, Picha has failed to appeal that ruling to our court
 
 
 [2]
 Interrogatory Number 1[: H]as the plaintiff established by a preponderance of the evidence that he has engaged in protected political activity under the First Amendment, yes or no?
 Interrogatory Number 2[: H]as the plaintiff established by a preponderance of the evidence that his protected activity was a substantial or motivating factor in defendant City of Parma's abolishing plaintiff's job, yes or no? ...
 Interrogatory Number 3[: H]as the defendant City of Parma shown by a preponderance of the evidence that it would have taken the same actions without considering the plaintiff's political activity, yes or no?
 ....
 Interrogatory N[umber] 4[:] Were the defendant City of Parma's actions in this matter a pretext to cover up [its] real reasons and motives ..., yes or no?
 Interrogatory Number 5[: H]as the plaintiff established by a preponderance of the evidence that his protected activity was a substantial or motivating factor in defendant Ries' abolishing plaintiff's job, yes or no?
 Interrogatory Number 6[: H]as the defendant Ries shown by a preponderance of the evidence that he would have taken the same actions without considering the plaintiff's political activity, yes or no?
 Interrogatory Number 7[:] Were defendant Ries' action [sic] in the matter a pretext to cover up his own role? Yes or no?
 J.App. at 560-61. The remaining interrogatories concerned the extent of the damages.
 
 
 [3]
 42 U.S.C. Sec. 2000e et seq. (1988)
 
 
 [4]
 Diversitech is instructive in this context because, as noted supra, the burdens of proof for the parties in a Title VII case are virtually the same as in a Sec. 1983 case. This does not mean, however, that all legal issues have the same outcome for the two types of cases. Diversitech stands for the principle, applicable to Sec. 1983 cases such as the one at hand, that a supervisor's illegal animus against an employee can be the "but-for" cause of that employee's termination even though the supervisor was not the ultimate decisionmaker responsible for the termination. Because Diversitech was a Title VII case, this principle resulted in liability for the employer, based upon the doctrine of respondeat superior. As made clear by Monell v. Department of Social Servs., 436 U.S. 658 (1978), however, a municipal entity such as the City of Parma may not be held liable in a Sec. 1983 case under the theory of respondeat superior. Thus, although the principle stated above holds good in Sec. 1983 cases, it cannot serve as a basis for Picha's claim against the City; it can do so, of course, for his claim against the Mayor
 
 
 [5]
 Just as Saye involved negative evaluations of the plaintiff's work performance as a rationale for termination, so in the case at hand Mayor Ries attempted to justify the abolition of the City's inspection program by presenting testimony to the City Council that there had been problems with the quality of the work by the in-house inspection team
 
 
 [6]
 Picha also points out that his counsel urged the district court to charge the jury as to the circumstances under which the City could be liable for the wrongful conduct of Mayor Ries in bringing about his dismissal. In response to counsel, the district court replied, unaccountably: "I don't think it matters because the City is going to be liable for the actions of the mayor anyway, so I don't think it's prejudicial to the plaintiff." Actually, Picha was not entitled to such a charge because, as has been seen, there was no basis in the record to hold the City responsible for the allegedly illegal and unauthorized conduct by Mayor Ries. See Monell and Feliciano, supra