NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0368n.06

No. 22-3954

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| RALPH E. JOCKE; PATRICIA A. WALKER; KEITH A. RASEY, | ) | **FILED** Aug 11, 2023 DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| CITY OF MEDINA, OHIO, | ) | |
| Defendant-Appellee. | ) | OPINION |

Before: STRANCH, BUSH, and MURPHY, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Plaintiffs Ralph E. Jocke, Patricia A. Walker, and Keith A. Rasey are politically active citizens in their Ohio city and county, both of which are named Medina. Since 2019, they have raised awareness around a joint courthouse project that would house two courts in Medina County. As part of these efforts, Plaintiffs founded the Save Your Courthouse Committee and proposed a "Citizens Initiative" for the 2020 ballot (the 2020 Initiative), which passed. But Plaintiffs allege their efforts were met with opposition from the City of Medina. More specifically, the City, according to Plaintiffs, violated their federal constitutional rights when it used public resources to oppose the 2020 Initiative. Plaintiffs sued the City under 42 U.S.C. § 1983, alleging nine federal claims based on *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). After cross motions for judgment on the pleadings, the district court ruled for the City on all claims. Because Plaintiffs fail to allege sufficient well-pleaded facts to sustain their *Monell* claims, we AFFIRM.

I.

The events relevant to this appeal begin in 2019, when Plaintiffs started collecting signatures for a ballot measure and to raise awareness of the joint courthouse project. That project sought to tear down historical portions of the courthouse and create a space for both city and county operations. *State ex rel. Save Your Courthouse Comm. v. City of Medina*, 137 N.E.3d 1118, 1121 (Ohio 2019) (per curiam). In their attempt to preserve the historic building, Plaintiffs failed to collect enough signatures in 2019 to put an initiative on the ballot, but they redoubled their efforts and were successful for the 2020 ballot. The 2020 Initiative imposed a requirement that a majority of qualified electors approve any spending of funds or construction activity at the Medina County Courthouse. The 2020 Initiative passed despite City opposition.

Notwithstanding Plaintiffs' ultimate success, they allege that the City violated their constitutional rights in several ways. For starters, they allege that Plaintiff Ralph Jocke was forcibly removed from a public sidewalk as he tried to gather signatures for the 2020 Initiative at a farmer's market. Though the street was closed for the farmer's market, the City set up a table there, where it urged people not to sign the 2020 Initiative. Plaintiffs asked if supporters of the 2020 Initiative could also have a table at the farmer's market, but their request was denied.

In further efforts to oppose the 2020 Initiative, a political action committee called "Medina Courthouse Facts, NO on Issue 7" (the PAC) was formed. Using a City department called "Medina TV," the City made a meeting room in City Hall available for a press conference hosted by the PAC. At the time, access to City Hall was limited—non-City entities were not permitted to meet there. Plaintiffs inquired whether the press conference would be open to the public, and the City responded that it would not. But Plaintiffs allege that they saw a Facebook post by the PAC stating the meeting would be public, so Jocke went to City Hall at the purported time of the conference

and gained entry. At the press conference, he allegedly saw many other individuals present whom he believed were not public officials. Upon seeing Jocke, the City Mayor informed him that he could not attend. At the City Mayor's direction, the City Police Chief then forcibly escorted Jocke out of City Hall.

Plaintiffs also allege that Medina TV was used to broadcast videos opposing the 2020 Initiative. Plaintiffs asked to have equal airtime to share their own views on the initiative, but that request was denied. According to an email from a manager at the station, Medina TV is a government access channel—while it is used for the government to address topics it chooses, it is not an open access channel for the public.

But that was not all the City did, according to Plaintiffs. The City, in December 2020, generated its own initiative to allow the joint courthouse project to move forward. Plaintiffs allege that, in promoting the joint courthouse project, the City intentionally confused Medina voters concerning the 2020 Initiative by infringing on Plaintiffs' trademark, through its use of similar slogans and colors. The purpose was to make Medina voters believe that the City's initiative for the joint courthouse project was supported by proponents of the 2020 Initiative.

Much litigation ensued between Plaintiffs and the City. Relevant here is a taxpayer lawsuit Plaintiffs filed against the City in state court. Among the allegations was that the City violated the 2020 Initiative, and Plaintiffs sought a permanent injunction preventing the City from moving forward with the joint courthouse project. In response, the City filed an answer and counterclaim against Plaintiffs. The City argued that, among other things, the 2020 Initiative violated the Ohio Constitution and the City's charter, and that it impaired the City's contracts. The City sought a declaratory judgment, as well as attorney's fees and litigation costs.

While that litigation was pending, Plaintiffs eventually brought this suit in federal court under § 1983, containing nine claims in total:

- Claim 1:  The City violated Jocke's First Amendment rights of freedom of speech and assembly and his Fourteenth Amendment right to equal protection when it excluded Jocke from the press conference about the 2020 Initiative while allowing other members of the public to remain.

- Claim 2:  The City violated Plaintiffs' First Amendment right to freedom of speech and Fourteenth Amendment right to equal protection when it prevented Plaintiffs from gathering signatures to support the 2020 Initiative on public sidewalks or closed roads made open to members of the public.

- Claim 3:  The City violated Plaintiffs' First Amendment rights to freedom of speech and Fourteenth Amendment right to equal protection when it refused to grant Plaintiffs access to Medina TV.

- Claim 4:  The City violated Plaintiffs' First Amendment rights to freedom of speech and association and Fourteenth Amendment right to equal protection when it brought a counterclaim against Plaintiffs in the taxpayer lawsuit.

- Claim 5:  The City violated Plaintiffs' Fourteenth Amendment rights to due process and equal protection when it brought the counterclaim against Plaintiffs to determine the constitutionality of the 2020 Initiative in Ohio state court.

- Claim 6:  The City violated Plaintiffs' Fourteenth Amendment right to equal protection when it continued to use City resources for the project in violation of the 2020 Initiative and took no action to remedy that violation.

- Claim 7:  The City violated Plaintiffs' Fourteenth Amendment right to equal protection when it failed to comply with the 2020 Initiative by authorizing the City-generated initiative.

- Claim 8:  The City violated Plaintiffs' Fourteenth Amendment rights to due process and equal protection when it made deliberate and false representations and abused the legal process in ongoing state proceedings.

- Claim 9:  The City violated Plaintiffs' Fourteenth Amendment right to due process when it violated Title 15 of the U.S. Code by infringing Plaintiffs' trademark and trade dress through the use of similar slogans and colors in its campaign supporting the City-generated initiative.

For relief, Plaintiffs requested an injunction enjoining the City from violating their constitutional rights, as well as attorney's fees and costs.

After the City's answer, both Plaintiffs and the City moved for judgment on the pleadings. The district court granted the City's motion and dismissed the entire case with prejudice. The district court determined that the complaint failed to allege sufficient facts to sustain a *Monell* claim. For Claims 2, 5, 6, 7, 8, and 9, the court determined that Plaintiffs did not adequately connect the alleged violations to a policy, practice, or custom of the City. As to the remaining claims, the court determined that, even if the alleged conduct was properly attributable to the City, the complaint did not adequately allege *unconstitutional* conduct on the part of the City.

In their response to the City's motion, Plaintiffs also asked for leave to amend their complaint if the court found that the claims were not adequately pleaded. The district court noted that their request was not a proper motion to amend the complaint and declined to grant them leave to amend.

Plaintiffs timely appealed.

## II.

We review de novo a district court's grant of a Rule 12(c) motion for judgment on the pleadings, and we use the same standard that applies to reviewing a Rule 12(b)(6) motion to dismiss.[1] *Moore v. Hiram Twp.*, 988 F.3d 353, 357 (6th Cir. 2021). "For purposes of a motion for

---

[1] Plaintiffs argue that, rather than granting a motion for judgment on the pleadings, the district court erroneously granted summary judgment. Rule 12(d) requires a court to convert a motion for judgment on the pleadings to a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." *Clark v. Stone*, 998 F.3d 287, 296 (6th Cir. 2021) (quoting Fed. R. Civ. P. 12(d)). But such conversion is not required when a court refers to exhibits attached to the complaint, public records, and items and other records of the case "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 695 (6th Cir. 2018) (quoting *Bassett v. Nat'l Collegiate*

judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)). Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Under this plausibility standard, the claim must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings that merely offer "labels and conclusions or a formulaic recitation of the elements of a cause of action," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or "naked assertions devoid of further factual enhancement" will not suffice. *Id.* (cleaned up) (quoting *Twombly*, 500 U.S. at 555, 557). In this regard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

III.

A § 1983 claim under a *Monell* theory of liability requires the plaintiff to allege that the local government's official policy or custom was "the moving force behind the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (cleaned up) (quoting *Monell*, 436 U.S. at 694). The allegation must be such that "the municipality's promulgation or adoption of

---

*Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). The district court was clear that it was not converting the motion for judgment on the pleadings to a motion for summary judgment, and that it considered only the pleadings, attachments to the pleadings, and the public records of the Ohio state court cases. True, when judgment was entered it stated "summary judgment," but that was a scrivener's error.

the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 692). Official policies include "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). So, to properly allege a *Monell* claim, the plaintiff must adequately allege: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *D'Ambrosio*, 747 F.3d at 386 (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)) (alterations in *D'Ambrosio*).

Under the appropriate circumstances, "municipal liability may be imposed for a single decision by municipal policy makers." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). When the plaintiff alleges a *Monell* claim for a single official's actions, that decision must be final and unreviewable to be attributable to the municipality. *See Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)). Even when the decision-maker is the mayor, the mayor must have final authority to establish the policy; otherwise, the municipality cannot be deemed liable under *Monell*. *See Picha v. City of Parma*, 28 F.3d 1214, 1994 WL 369135, at *4 (6th Cir. 1994) (unpublished per curiam). Essentially, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483. But, "[t]here can be no liability under *Monell* without an

underlying constitutional violation." *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)).

A. Claim 1

Plaintiffs allege that the City violated Jocke's First Amendment rights to free speech and assembly, as well as his Fourteenth Amendment right to equal protection, when Jocke was forcibly removed from the press conference at City Hall at the direction of the City Mayor. It is unclear in the complaint whether the City Mayor had final decision-making authority over who could attend the press conference. Nevertheless, reviewed in the light most favorable to Plaintiffs, the complaint could be construed as alleging that the City Mayor had final decision-making authority there. But Claim 1 still fails because Plaintiffs fail to allege adequately a constitutional violation.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Not all government property, however, is open to all forms of First Amendment activity. We determine the constitutionality of government restrictions on speech on public property by answering three questions: "(1) whether the speech is protected under the First Amendment; (2) what type of forum is at issue and, therefore, what constitutional standard applies; (3) whether the restriction on speech in question satisfies the constitutional standard for the forum." *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010). When the allegations concern limitations on assembly, our precedent often examines them under the same forum analysis. *See United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland*, 383 F.3d 449, 451–53 (6th Cir. 2004); *Grider v. Abramson*, 180 F.3d 739, 747–49 (6th Cir. 1999); *see also Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983).

There are three types of public fora: the traditional public forum, the designated public forum, and the limited public forum. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 469–470 (2009). Depending on the type of forum in question, the government has greater or lesser ability to regulate speech. *See id.* In traditional public fora, such as public streets and parks, government entities "are strictly limited in their ability to regulate private speech." *Id.* at 469. While "[r]easonable time, place, and manner restrictions are allowed, . . . any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest." *Id.* (citations omitted). Designated public fora are subject to the same standard. *Id.* at 469-70. Limited public fora, by contrast, exist where the government has created a forum that is "limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Id.* at 470. There, governments "may impose restrictions on speech that are reasonable and viewpoint neutral." *Id.* Ultimately, the key is to determine "whether the government intended to open the forum at issue." *Kincaid v. Gibson*, 236 F.3d 342, 348–49 (6th Cir. 2001) (en banc) (citing *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985)).

Jocke's removal from the City Hall allegedly took place during a press conference concerning the 2020 Initiative. On appeal, without much specificity, Plaintiffs argue that the press conference was a "public meeting," and that Jocke was excluded because of his viewpoint on the 2020 Initiative.

But Plaintiffs fail to allege adequately a First Amendment violation based on the press conference proceedings. Plaintiffs' own complaint contradicts their story of a public meeting. When Plaintiffs inquired with the City Mayor's office about the press conference, they were informed that it was not open to the public. Additionally, Plaintiffs admit in their complaint that

access to the City Hall, where the press conference was held, was limited due to COVID-19. The only invitees were local media representatives. Plaintiffs allege Jocke witnessed individuals who Plaintiffs believe were not public officials, but fail to allege that these individuals were not the local media representatives. Plaintiffs attempt to rebut this with evidence from a Facebook post that, under details, lists the press conference as "public." But Plaintiffs do not logically connect the Facebook announcement with any government official. Thus, considering the facts as alleged, the press conference was not a public forum and access to the City Hall was reasonably restricted due to COVID-19. *See Kincaid*, 236 F.3d at 348–49; *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023) (when considering factual allegations, we "need not accept as true . . . unwarranted factual inferences" (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007))).

Plaintiffs' equal protection claim fails for similar reasons. The City did not treat Plaintiffs any differently than other similarly situated citizens when Plaintiffs were denied entry to the press conference. *See Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 521 (6th Cir. 2019).

### B.  Claim 2

Plaintiffs allege that their First Amendment right to free speech and their Fourteenth Amendment right to equal protection were violated when police officers prevented them from gathering signatures in support of the 2020 Initiative "while standing on the public sidewalk next to the Farmer's Market." This was allegedly done while the City—at the same farmer's market—urged people not to sign Plaintiffs' petition and handed out flyers advising people to vote against the 2020 Initiative.

Claim 2 does not give rise to a *Monell* claim. Though Plaintiffs identify police officers as the ones who prevented them from exercising their free speech rights, they do not identify a custom

or policy or final decision-maker that authorized the police officers' actions. Nor do Plaintiffs claim that the City failed to inadequately train or supervise the police officers. Such identification is essential to maintain a *Monell* claim against the City.[2] *See D'Ambrosio*, 747 F.3d at 38687. Thus, Plaintiffs' *Monell* claim as to Claim 2 fails.

### C. Claim 3

Plaintiffs allege that the City used Medina TV to broadcast views opposing the 2020 Initiative, while Plaintiffs and other proponents of the Initiative were denied access to present their own views. Plaintiffs allege that this denial resulted from a custom of the City. The complaint does not identify who denied the request, though attached to the complaint is an email from what seems to be an employee at Medina TV. The email informed Plaintiffs that the government access channel is unavailable to the public but offered a public access channel where they may request airtime to express their views.

Plaintiffs' complaint belies their *Monell* claim. Unlike Claim 1, the complaint does not identify *which* City employee denied them access to Medina TV and whether that employee had final decision-making authority. There is only a conclusory statement that, while views supporting the 2020 Initiative were excluded from the broadcast by unnamed persons, the City's broadcasting of opposing views was "done under the color of law as shown in the Ordinances of the City and

---

[2] Plaintiffs reference on appeal a transcript taken from a case management conference, where a City official allegedly identifies the illegal custom or policy that prevented Plaintiffs from exercising their free speech rights. Additionally, after all briefs were filed, Plaintiffs asked this court to consider meeting minutes allegedly posted by the government on Facebook. In deciding a motion for judgment on the pleadings, we look only to the complaint and the exhibits it references that are central to its claims. *United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 201 (6th Cir. 2022); *Brent*, 901 F.3d at 695. Plaintiffs cite no authority for us to review a case management conference transcript not referenced in the complaint, let alone meeting minutes that were not properly before the district court. *See Lawrence v. Chabot*, 182 F. App'x 442, 455 n.5 (6th Cir. 2006).

the custom and usage of the City." Nowhere in the complaint do Plaintiffs identify what those ordinances are, nor do they identify an individual with final decision-making authority who ratified the decision. Such conclusory statements are insufficient to establish a *Monell* claim. *See Iqbal*, 556 U.S. at 678. Plaintiffs claim that the City had a custom and usage of denying access to political opponents, but, in the email chain, Plaintiffs state "it has been the practice of Medina TV to have all sides of an issue . . . to have an opportunity to appear." In Plaintiffs' own words, therefore, their denied request was not part of the City's custom. Accordingly, Plaintiffs fail to allege adequately a *Monell* claim as to their denied use of Medina TV.

D. Claim 4

Plaintiffs argue not only that we should reverse the district court's grant of the City's motion for judgment on the pleadings for Claim 4, but also that we should grant Plaintiffs' motion for judgment on the pleadings for this claim. But, here as well, we affirm the district court.

Plaintiffs allege that the City violated their First Amendment rights when it counterclaimed against them after Plaintiffs filed a taxpayer lawsuit against the City. Similar to Claim 3, the complaint fails to identify who decided to file the counterclaim—it only makes a conclusory statement that the counterclaim was brought under the color of law and custom and usage of the City. Yet, even if we afford Plaintiffs the latitude that a counterclaim could not have been filed without the authorization of a final decision-maker, Plaintiffs still fail to allege adequately a *Monell* claim.

We construe Plaintiffs' allegations related to the City's counterclaim as a First Amendment retaliation claim, a characterization Plaintiffs adopt in their appellate brief. To sustain a First Amendment retaliation claim, the plaintiff must sufficiently allege that "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that

would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (quoting *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)). We will focus our analysis on the third element.

Not every adverse action related to First Amendment activity is constitutionally cognizable. *Sensabaugh v. Halliburton*, 937 F.3d 621, 628 (6th Cir. 2019). When considering the third element, we require a plaintiff to show that the plaintiff's protected activity at least partially motivated the government to take the adverse action. *See Lemaster v. Lawrence Cnty.*, 65 F.4th 302, 309 (6th Cir. 2023). Our inquiry into motivation is limited at the early stages of litigation. *See Handy-Clay*, 695 F.3d at 545 (citing *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 232 (6th Cir. 2005)). Close proximity between the protected speech and the adverse action can support the requisite motivation. *See Buddenberg v. Weisdack*, 939 F.3d 732, 741 (6th Cir. 2019). But we may find a lack of requisite motivation where the government can show it "would have taken the same action even in the absence of the protected conduct." *Evans-Marshall*, 428 F.3d at 232 (citation omitted).

Plaintiffs argue that the very nature of the counterclaim demonstrates motivation—that there was no reason for the City to sue Plaintiffs except for Plaintiffs' outspoken position on the 2020 Initiative. But the nature of the counterclaim and the way it was brought lead us to conclude otherwise.

Ohio Rule of Civil Procedure 13(A) requires a responsive pleading to "state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Ohio R. Civ. P. 13(A). Plaintiffs' lawsuit, brought on behalf of the

taxpayers of Medina pursuant to Ohio Revised Code § 733.59, sought an injunction against the City for, among other things, violating the 2020 Initiative. *See City of Medina ex rel. Jocke v. City of Medina*, No. 21CIV0083 (Ohio C.P. Medina Cnty. Apr. 22, 2021). The City answered in part with a counterclaim, seeking a declaratory judgment that the Initiative violated the Ohio Constitution and the City's charter, and that it impaired the City's contractual rights. *Id.* Further, contrary to Plaintiffs' assertion, the City did not seek damages; rather, the City sought attorney's fees and costs of litigation. *Id.* That the counterclaim named Plaintiffs specifically is of no consequence—Plaintiffs were the named taxpayers bringing the lawsuit on behalf of other taxpayers. *Id.* Whatever the merits of Plaintiffs' claims on Ohio law grounds, the City did not bring its counterclaim because of Plaintiffs' protected speech, but rather because of Ohio's rules of civil procedure. *See Aday v. Westfield Ins. Co.*, No. 21-3115, 2022 WL 203327, at *14 (6th Cir. Jan. 24, 2022). Such an action is not of the same caliber of actions that we have previously suggested could raise an inference of unlawful motivation. *Cf. Benison v. Ross*, 765 F.3d 649, 660–63 (6th Cir. 2014) (government entity's decision to *initiate* a lawsuit against plaintiff constituted an adverse action).

Plaintiffs' equal protection portion of the claim also fails. Equal protection "embodies the principle that all persons similarly situated should be treated alike." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Disparate treatment among similarly situated persons is the threshold element of any equal protection claim. *Id.* Aside from failing to allege sufficiently a First Amendment retaliation claim, at no point in the complaint do Plaintiffs identify similarly situated persons who were treated differently by the City. In their appellate brief, Plaintiffs mention other "initiative supporters" who were not part of the City's counterclaim, but they fail to allege that any

of those other supporters sued the City on the taxpayers' behalf and that the City in turn failed to counterclaim against them. Plaintiffs' equal protection claim therefore fails. *See id.*

Finally, for the first time on appeal, Plaintiffs argue that the City's counterclaim constituted a SLAPP suit—that is, a strategic lawsuit against public participation. We generally do not consider arguments raised for the first time on appeal and decline to do so here. *See Cash-Darling v. Recycling Equip., Inc.*, 62 F.4th 969, 975 (6th Cir. 2023) ("As a general rule in this Circuit, arguments raised for the first time on appeal are forfeited." (quoting *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781 (6th Cir. 2015))).

E.   Claim 9

Plaintiffs allege that the City violated their due process rights under § 1983 when the City misappropriated the "Save Your Courthouse" slogans and colors in violation of Title 15 of the United States Code.[3] But, again, Plaintiffs fail to allege, outside of conclusory statements, facts that establish the existence of an illegal policy or law that required the misappropriation. *D'Ambrosio*, 747 F.3d at 38687. Nor does the complaint identify persons with final decision-making authority that ratified the action, let alone any existing custom of, tolerance of, or acquiescence to violating federal rights. *See id.* We therefore find that Plaintiffs failed to plead facts sufficient to sustain a *Monell* claim for Claim 9.

IV.

In their appellate brief, Plaintiffs provide no argument concerning Claims 5, 6, 7, and 8. At most, they state in a footnote that "[a]ll nine claims are valid claims, and the dismissal of all claims should be reversed for reasons discussed in connection with the other claims." Because

---

[3] Plaintiffs argue for the first time on appeal that their complaint should be construed to assert an independent unfair–competition claim under 15 U.S.C. § 1125(a). But we decline to review the claim for the first time on appeal. *Cash-Darling*, 62 F.4th at 975.

Plaintiffs made no effort to develop arguments supporting Claims 5, 6, 7, and 8, those claims are forfeited. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 525 n.4 (6th Cir. 2006) (claims were forfeited when plaintiff failed to offer more than a perfunctory statement in appellate brief for why claims should survive motion for judgment on the pleadings) (citing *United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999)).

V.

Lastly, Plaintiffs argue the district court erred when it failed to grant them leave to amend their complaint. We review a district court's denial of leave to amend a complaint for abuse of discretion. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008) (citing *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006)). When the district court denies leave to amend a complaint because no amended pleading would survive a motion to dismiss, we review such denial de novo. *Id.*

As part of their opposition to the City's motion for judgment on the pleadings, Plaintiffs included a section titled "Motion to Amend Pleadings." The section, without explanation, only requested leave to amend the complaint should the district court find the pleadings inadequate. The district court denied Plaintiffs' request, stating that they had failed to move properly to amend, and that their request lacked legal support. What's more, Plaintiffs failed to provide the district court any information concerning the proposed amendments. We have previously held that a district court did not abuse its discretion when it denied leave to amend a complaint based on a request first made in opposition to a motion to dismiss, rather than in a separate motion to amend. *See Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000). Accordingly, we find that the district court did not abuse its discretion here.

VI.

For the foregoing reasons we AFFIRM the district court's grant of the City's motion for judgment on the pleadings.